IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **GARRY ZEIGLER, SR.** | * | **CIVIL ACTION NO. 09-01623** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **JERRY GOODWIN, WARDEN** | * | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus, 28 U.S.C. § 2254, filed on September 16, 2009, by pro se petitioner, Garry Zeigler, Sr. ("Zeigler"). Doc. # 1. Zeigler is an inmate in the custody of the Louisiana Department of Public Safety and Corrections. This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For reasons assigned below, it is recommended that the petition (doc. # 1) be **DENIED**.

BACKGROUND

On June 30, 2004, Zeigler was convicted by a jury in Louisiana's Fourth Judicial District of the distribution of cocaine. He was subsequently adjudicated as a fourth felony habitual offender and sentenced to the mandatory minimum term of imprisonment of 30 years. The underlying facts of this case were set forth by the Second Circuit of the Louisiana Court of Appeal:

> In September 2003, the Metro Narcotics FBI Drug Task Force (hereinafter referred to as "Metro") conducted a "buy bust" on Craig Morgan.[1] Information obtained from Morgan led to a Metro investigation of the defendant, Garry Zeigler, Sr. Specifically, Morgan

---

[1] A "buy bust" is a police operation in which drugs are purchased and the dealer is arrested at the same time.

identified Zeigler as his cocaine supplier to Lieutenant Mike Rowland, a narcotics agent with the Ouachita Parish Sheriff's Office assigned to Metro.[2] Ultimately, Zeigler was charged by bill of information with distribution of cocaine. His initial trial commenced on May 4, 2004, but ended in a mistrial. Zeigler was re-tried on June 28, 2004. Metro officer Lt. Rowland, Corporal Mark Johnson and Deputy Sheriff Jack Kottenbrook, plus reliable confidential informant Thomas Brown all testified at Zeigler's trial.[3]

At Zeigler's second trial, Lt. Rowland related that on September 5, 2003, in the presence of Metro agents at their offices, Morgan made a recorded phone call to Zeigler and requested cocaine. Zeigler told Morgan that he was out of cocaine but would get more later that day. The jury listened to the tape recording of that conversation.

On September 9th, Zeigler called Morgan at Morgan's residence, and a cocaine deal was set up. Morgan was to meet Zeigler "in a few minutes" at a gas station in West Monroe, Louisiana. Morgan contacted Lt. Rowland and advised him of the arrangements.

As further explained at trial by Lt. Rowland, he set up a buy bust of Zeigler. He arranged for the reliable confidential informant, Brown, who was known as "Wrangler," to drive Morgan to the meeting with Zeigler. Metro officers searched Brown's vehicle and then equipped it with audio and video recording/surveillance equipment. Brown was briefed on the drug deal and shown a photograph of Zeigler. Metro officers searched Brown and then gave him $ 100.00 of pre-recorded "buy money." Metro surveillance units followed Brown as he drove to pick up Morgan and brought him to the designated gas station. Wrangler waited for the defendant while he met with Zeigler.

Brown testified that Zeigler arrived at the gas station, and Morgan yelled to him to get his attention. Zeigler stopped at the end of the parking lot, and Morgan walked over to Zeigler's vehicle. At that time, Zeigler handed Morgan a blue, clear plastic ball containing cocaine. Morgan returned to Brown's vehicle with the cocaine, and Brown handed Morgan the buy money. Morgan then went over to Zeigler's vehicle and handed him the buy money, completing the transaction.

Brown had given a description of Zeigler's vehicle to the surveillance unit and had observed the hand-to-hand transfer of cocaine and money between Morgan and Zeigler from his vehicle. Lieutenant Rowland testified that he listened to the transaction as it took place via Brown's surveillance equipment.

Immediately after the transaction, Lt. Rowland arrived on the scene and took possession of the plastic ball containing six pieces of what was later determined to be crack cocaine.

---

[2] Lt. Rowland's name also appears in the record as "Rowlan."

[3] Morgan was called by the state as a witness, but refused to testify.

> Lieutenant Rowland testified that the crime lab report stated that the analysis showed the seized items to be cocaine. The state's motion to introduce the crime lab report into evidence was granted without objection by the defense.
>
> As Zeigler drove away, he was immediately followed by Metro surveillance and warrant units, which included Corp. Johnson and Dep. Kottenbrook. According to Corp. Johnson, Metro units attempted to block in Zeigler at an intersection to make the arrest; however, he drove through the red light and collided with Dep. Kottenbrook's vehicle. Corporal Johnson testified that Zeigler was subsequently removed from his vehicle (he was unharmed), handcuffed, arrested and advised of his *Miranda* rights. Corporal Johnson recovered the $ 100.00 buy money from between the driver's seat and the console of Zeigler's vehicle and turned it over to Lt. Rowland.

*State of Louisiana v. Zeigler*, 920 So. 2d 949, 951-52 (La. Ct. App. 2006).

After exhausting his state court remedies, Zeigler filed the instant petition. He alleges the following grounds for relief: (1) the trial court erroneously introduced an incriminating statement that he made in the absence of his trial counsel, Lee Perkins ("Perkins"); (2) Perkins was ineffective for arranging for Zeigler to speak with Lt. Rowland; (3) the trial judge erroneously told the jury to continue deliberations after the jury foreman told the judge that they were unable to reach a verdict; (4) the trial court erroneously admitted hearsay testimony that also violated Zeigler's rights under the Confrontation Clause; (5) the trial court erroneously allowed written evidence to be taken into the jury room while the jury was deliberating; (6) the evidence presented at trial was insufficient to support his conviction; and (7) he was improperly adjudicated as a fourth felony habitual offender.

## LAW AND ANALYSIS

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA) of 1966, 28 U.S.C. § 2254, governs habeas corpus relief. The standard of review is set forth in 28 U.S.C. § 2254(d):

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## II. Petitioner's Claims

### A. Admission of Incriminating Statement

Zeigler's first claim focuses on Lt. Rowland's testimony that Zeigler told him that "he

wasn't a big drug dealer . . . he would just go buy a half an ounce or so and resell it to make some money." R. at 349. Zeigler specifically contends that the trial court erred in admitting this statement because he made the statement without being advised of his *Miranda* rights and in the absence of counsel.

      Zeigler's claim is unavailing. The record indicates that Lt. Rowland related Zeigler's incriminating statement not to the jury at trial, but at the free and voluntary hearing that the court held prior to trial. R.336-372. Even though the trial court determined that the statement was admissible at the free and voluntary hearing, a thorough review of the record shows that the statement was not actually introduced at trial, the state apparently having been convinced after the hearing that the statement was not admissible. Instead, Lt. Rowland limited his testimony at trial to a statement that Zeigler made to him shortly after his arrest, after he had been read his rights and before his counsel was appointed, to the effect that the defendant claimed to have given the cocaine to Morgan rather than selling it to him, and that Morgan had thrown the money into his car as he drove off. R. 389 As the statement Zeigler now objects to was not used against him at trial, Zeigler cannot demonstrate that he was prejudiced by it.

      **B. Ineffective Assistance of Counsel**

      Zeigler's second claim is connected to his first. He contends that his trial counsel, Lee Perkins, was ineffective for arranging the meeting with Lt. Rowland in which Zeigler made his incriminating statement to Lt. Rowland to the effect that he "wasn't a big drug dealer . . . ." R. at 349.

      To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the

5

ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).

Like Zeigler's first claim, this claim also fails because the state did not introduce the statement in question at trial. Accordingly, Zeigler cannot demonstrate that he was prejudiced by the statement, and thus by Perkins' alleged deficient performance.

### C. Trial Judge's Instructions to the Jury

With his next claim, Zeigler essentially argues that the trial judge, Judge Benjamin Jones, gave the jury a coercive supplemental instruction. However, a review of the record indicates otherwise.

After the jury had deliberated for three hours, the jury foreman notified the court that the jury had not yet reached a verdict. Judge Jones called the foreman into court and the following exchange then occurred:

> The Court: Mr. Foreman, my bailiff reports to me that you all are - have not been able to reach a verdict. Let me just tell you this. The court - even the judge is not entitled to know the details such as how many are voting this way and how many are voting that way and for what charge and for what responsive verdict. That sort of thing. And when I say responsive verdict, I mean everything from guilty which would be guilty as charged to distribution to not guilty. We're just not entitled to know how many on this side, how many on that side. That sort of thing. But you all have been at this for about three hours thereabouts. And have had a fair amount of time to discuss all the facts and all of that. Is it your view, sir, that further discussions would not do any good? By which I mean permit you and I'm not talking about how you voted. I'm not entitled to know how you voted or what side of this you're voting. I'm not asking you that. But as the foreman you have to *ramrod the thing*.
> Foreman: Right.
> The Court: In your view as foreman, do you think any further deliberations would do any good on the point of at least ten of you coming to the same verdict on

6

| | |
|---|---|
| | any one of the possible responses? |
| Foreman: | At this point, Your Honor, it's been back and forth with different aspects of it. Back and forth. And if you just give us thirty more minutes and I'll put that to - that don't look like we're going to get anywhere with that, this back and forth, back and forth and back and forth. It's either going higher or going lower. But it's still uneven. |
| The Court: | And in one of the votes you've been able to call for - first of all have you called for some votes? |
| Foreman: | Yeah. Numerous times. |
| The Court: | And none of those votes have resulted in ten of you going the same way on anything? |
| Foreman: | None of them. |
| The Court: | Is that right? |
| Foreman: | Correct. |
| The Court: | I don't want to know how close you are, whether it's seven this way and five that way. Or eight that way and - I don't even want to know if there are nine this way and three that way. I don't think we're entitled to know that. I tell you what. You all go back. I'm going to exceed [sic] to your request that you be allowed another thirty minutes to talk about it. And go on back and you all discuss it. I don't see any reason why the twelve of you can't do as good a job as any other twelve people in terms of trying to reach a verdict in this matter. But I'm not going to go beyond saying that. I'm going to ask you to go back and lead the discussion and see if the jury can come to terms on some verdict. |
| Foreman: | Okay. |
| The Court: | It's up to you all what it is. |
| Foreman: | Right. |
| The Court: | And the court is not going to weigh in on that. But there has go to be - to reach a verdict there has got to be ten of you going the same way on whatever it is. Any less than that does not produce a verdict. Okay, Mr. Foreman, we'll check back with you about ten till seven. |

R. at 461-64 (emphasis added).

In order to overturn a state court's conviction based on erroneous jury instructions, "a habeas petitioner must establish that the court's charge, under the totality of the circumstances, was so coercive as to have unconstitutionally rendered the petitioner's trial fundamentally unfair." *Montoya v. Scott*, 65 F.3d 405, 409 (5th Cir. 1995).

Zeigler points to Judge Jones' statement to the foreman to "ramrod the thing" in order to

7

underscore that the judge coerced the jury into reaching a verdict.  However, while the judge's choice of words was certainly unfortunate, it did not render Zeigler's trial "fundamentally unfair."

As an initial matter, Judge Jones' supplemental instruction was certainly not as coercive as the modified *Allen* charge approved by the Fifth Circuit.  *See* Fifth Circuit Pattern Jury Instructions (Criminal) § 1.45.  Since the judge gave his instruction only to the foreman, and not to the entire jury, the instruction did not contain "the most troublesome feature of the *Allen* charge - the exhortation to the minority to reexamine its views in light of the majority's arguments." *United States v. Cheramie*, 520 F.2d 325, 330-31 (5th Cir. 1975).  Furthermore, the instruction also did not deliver a "sharp punch to the jury" in that it did not include another troublesome feature of the *Allen* charge - a reminder of the time and expense of the trial, and also of the potential additional costs that could be incurred by the court and the state if the jury did not reach a verdict.  *See United States v. Anderton*, 679 F.2d 1199, 1203 (5th Cir. 1982).

In addition, courts have determined on habeas review that supplemental instructions far more forceful than that given by Judge Jones were not unconstitutionally coercive.  For example, in *Lowenfield v. Phelps*, 484 U.S. 231 (1988), the Supreme Court held that a state trial court had not rendered a trial unfair when it made an inquiry into the number of jurors who believed that further deliberations would allow them to reach a verdict and then gave the jury a modified *Allen* charge. Furthermore, in *Bryan v. Wainwright*, 511 F.2d 644 (5th Cir. 1975), the Fifth Circuit considered a state trial court's decision to call *sua sponte* the jury into the court and give it an *Allen* charge, only to call *sua sponte* the jury back into the court half an hour later to give them a twenty minute deadline to reach a verdict.  The Fifth Circuit in *Bryan* determined that the court's

8

supplemental instructions were not unconstitutionally coercive.

In this case, Judge Jones essentially agreed to the foreman's request for thirty additional minutes to deliberate with his fellow jurors. Judge Jones did not call the entire jury into the courtroom to discuss their duties when the foreman told him that the jury had not yet reached a verdict, and the supplemental instructions Judge Jones gave the foreman did not even slightly resemble the modified *Allen* charge approved by the Fifth Circuit. While Judge Jones certainly could have used a better word than "ramrod" to describe the foreman's duty, the totality of the circumstances demonstrates that Judge Jones' supplemental instructions were not so coercive as to warrant the overturning of Zeigler's conviction under 28 U.S.C. § 2254.

### D. Hearsay/Confrontation Clause

On direct examination, Lt. Rowland was asked how he began his investigation into Zeigler. He responded, "That investigation originated with another buy/bust I described earlier with a subject known as Craig Morgan. He sold cocaine to an undercover police officer. We brought him back to Metro Narcotics and he divulged his supplier which was Garry Zeigler." R. at 377-378.

Zeigler contends that Rowland's testimony was hearsay and also violated his rights under the Confrontation Clause of the Sixth Amendment.

#### 1. Hearsay

Evidentiary errors of state law are generally not cognizable in federal habeas review, unless the errors were so prejudicial as to result in a denial of a constitutionally fair proceeding. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999). Indeed, "the erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical,

9

and highly significant' role in the jury's determination." *Id*. Thus, in order for Zeigler to obtain relief on his claim that Lt. Rowland's testimony was inadmissible hearsay under Louisiana law, he would have to prove that the trial court's erroneous admission of this testimony was so prejudicial that it denied him the right to a fair proceeding. Zeigler cannot make this showing because he cannot demonstrate that the admission of Lt. Rowland's testimony was erroneous under state law in the first place.

"A police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted not to prove the truth of the assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the investigating officer." *State v. Watson*, 449 So. 2d 1321, 1328 (La. 1984).

The record demonstrates that Lt. Rowland related what Craig Morgan told him about Zeigler in order to explain why he started to investigate Zeigler, and that the jury was instructed to limit its consideration of the evidence to that purpose. Accordingly, Lt. Rowland's testimony was not hearsay.

### 2. Confrontation Clause

Testimony that is admissible under a hearsay exception may nevertheless violate a defendant's rights under the Confrontation Clause. At the time of Zeigler's trial, the Supreme Court's Confrontation Clause jurisprudence was governed by its decision in *Crawford v. Washington*, 541 U.S. 36 (2004). Under *Crawford*, the Confrontation Clause prohibits the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Id.* at 53-54. Testimonial statements include "*ex parte* in-court testimony or its functional equivalent -

that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.* at 51.

The introduction of the testimony at issue by Lt. Rowland violated Zeigler's rights under the Confrontation Clause. The statement that Craig Morgan made to Lt. Rowland was certainly testimonial in that Morgan could have expected the state to use it to prosecute Zeigler. Furthermore, although Morgan was technically an unavailable witness under both LA. CODE EVID. ANN. art. 804(a)(1) and FED. R. EVID. 804(A)(1) in that he refused to testify despite being ordered to do so by the court, Zeigler's trial counsel never had the opportunity to cross-examine Morgan.[4]

Nevertheless, "[c]onfrontation clause violations are subject to harmless error analysis." *Fratta v. Quarterman*, 536 F.3d 485, 507-08 (5th Cir. 2008). Such violations merit habeas relief "only if it had a substantial and injurious effect or influence in determining the jury's verdict." *Clark v. Epps*, 359 Fed. Appx. 481, 485 (5th Cir. 2009). In conducting this analysis, courts consider: (1) the importance of the testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony; and (4) the overall strength of the prosecution's case against the defendant. *Cupit v. Whitley*, 28 F.3d 532, 539 (5th Cir. 1994). Of these factors, "the strength of the prosecution's case is probably the single most important factor in determining whether the error was harmless." *Id.*

---

[4] Both of these rules of evidence provide that a witness is unavailable when the witness "is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement "

11

Morgan's statement to Lt. Rowland was not central to the state's case. As previously noted, the state used the statement merely to demonstrate why the police began to investigate Zeigler in the first place.

Furthermore, the state's case is very strong even without Morgan's statement. Thomas Brown, the reliable confidential informant, testified that he witnessed Morgan hand Zeigler the buy money and Zeigler give Morgan a plastic ball that contained a substance in return. R. at 404-05. Lt. Rowland testified that he subsequently retrieved the plastic ball, which contained six pieces of what was later determined to be crack cocaine. *Id.* at 385. Finally, Corporal Johnson testified that he retrieved the buy money used in the transaction from Zeigler's car. *Id.* at 429. Accordingly, the state did not need the statement in question to prove its case, and thus the admission of this statement did not have a substantial and injurious effect on the jury's verdict.

### E. Written Evidence in the Jury Room

Jones argues that the trial court violated state law in allowing the jury to view a crime lab report while they were deliberating. As previously stated, evidentiary errors of state law are generally not cognizable in federal habeas review, unless the errors were so prejudicial as to result in a denial of a constitutionally fair proceeding. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).

Assuming Jones intended to raise a federal claim on this matter, the claim is without merit because Jones cannot even demonstrate that the trial court violated state law in allowing the jury to view the crime lab report. The relevant statute, LA. CODE CRIM PROC. ANN. art. 793(A), provides, "[u]pon the request of a juror and in the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical

examination thereof is required to enable the jury to arrive at a verdict."

At trial, the state introduced the crime lab report as evidence. R. at 390. After the jury began its deliberations, it asked for the crime lab report. *Id.* at 454. This report simply indicated that the substance that the police had collected at the crime scene on September 9 was crack cocaine. Accordingly, the trial court did not abuse its discretion in allowing the jury to view it. *See id.* at 391.

### F. Insufficient Evidence

Zeigler contends that the evidence that the state introduced at trial was insufficient to support his conviction. This argument is also without merit.

When a habeas petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question before a federal habeas court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002). A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780,

783 (5th Cir. 1991).

In rejecting Zeigler's insufficiency of the evidence argument, the Louisiana Second Circuit emphasized the testimony of Brown, the reliable confidential informant, who witnessed Zeigler sell a substance that appeared to be crack cocaine to Morgan, and Lt. Rowland, who had been monitoring the transaction via surveillance equipment and subsequently retrieved the crack cocaine. *State of Louisiana v. Zeigler*, 920 So. 2d at 954. The Louisiana court also emphasized the crime lab report, which verified that the substance that Zeigler transferred to Morgan was indeed crack cocaine. *Id.* Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have certainly found, beyond a reasonable doubt, that Zeigler committed the crime of the distribution of cocaine.

**G. Sentencing Error**

At sentencing, Zeigler was adjudicated as a fourth felony offender, and sentenced to the mandatory minimum term of imprisonment of 30 years. *State of Louisiana v. Zeigler*, 968 So. 2d 875, 877-78 (La. Ct. App. 2007). With his final claim, Zeigler essentially contends that he should have been adjudicated a third felony offender.

As previously noted, it is "not the province of a federal habeas court to determine if the state courts properly applied state law." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Thus, to be entitled to relief, a habeas petitioner "must claim violation of a federal constitutional right." *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). Zeigler has not done so with this particular claim, and thus the claim may be denied on this basis.

Nevertheless, Zeigler's contention is without merit. In a well-reasoned opinion, the Louisiana Second Circuit clearly demonstrated why Zeigler was properly adjudicated as a fourth

felony offender. *State of Louisiana v. Zeigler*, 945 So. 2d 946, 949-54 (La. Ct. App. 2006).

## CONCLUSION

For the reasons stated above, it is recommended that petitioners' motion (doc. # 1) under 28 U.S.C. § 2255 be **DENIED**. Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 2nd day of August, 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE